UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

PHILLIP RISE                    )
                                )
            Petitioner,         )
                                )       CIVIL ACTION NO.
        v.                      )       09-12043-DPW
                                )
THOMAS DICKHAUT                 )
                                )
            Respondent.         )
                                )

MEMORANDUM AND ORDER
August 12, 2011

Petitioner Phillip Rise seeks federal *habeas corpus* relief from his convictions for first degree murder and armed robbery in Massachusetts state court.  He claims that (a) his convictions were based on insufficient evidence; (b) the prosecutor made improper statements in closing arguments; (c) an error occurred in the admission of blood spatter evidence at trial; and (d) trial counsel provided ineffective assistance in failing to challenge the blood spatter evidence adequately.

I. BACKGROUND

A federal district court evaluating a petition for *habeas corpus* must presume that the factual issues determined by the state court are correct.  28 U.S.C. § 2254(e)(1).  The § 2254(e)(1) presumption of correctness applies when either a state appellate or trial court adopts factual findings.  *Teti v. Bender*, 507 F.3d 50, 58-59 (1st Cir. 2007).  The following facts are drawn from the decision of the Supreme Judicial Court in this

case, *Commonwealth v. Phillips*, 897 N.E. 2d 31 (Mass. 2008).

On the evening of January 11, 2000, at approximately 11:45 p.m., police responded to a call at 951 Blue Hill Avenue, a three-family residence in Boston. *Phillips*, 897 N.E. 2d at 36. When they arrived, the police found the victim, a known drug dealer who lived in the second-floor apartment, lying on the front lawn. *Id.* He "was alive but gurgling, with his head and face covered in blood." *Id.* After being transported to a hospital, he died of multiple stab wounds and blunt head trauma. *Id.* at 36-37.

Earlier in the evening, Shawn Echols ("Echols") and Courtney Woods, friends of the victim, had arrived outside the house. *Id.* at 36. Woods entered while Echols stayed outside to speak with a neighbor. *Id.* Rise, who was known by Echols, walked past and greeted him. *Id.* He was alone and was let into the house by Courtney Woods. *Id.* Seconds later Rise's co-defendant, Parish Phillips, and an unknown man also approached the house and were let in by Courtney Woods. *Id.*

A short time after the men entered the house, Echols heard gunshots and yelling and looked up to see the victim hanging from a second-floor window upside down. *Id.* Echols could see people behind the victim but did not know who was holding him. *Id.* The victim was suspended for about four seconds and was then dropped to the ground landing on his head. *Id.* Seconds later, Rise,

2

Phillips and the unknown man ran out the front door. *Id.* Rise was carrying something wrapped in a sheet. *Id.*

When the police arrived, they questioned Echols, who told them what he had seen, described the men, and indicated the direction in which they had fled. *Id.* The police sent out a broadcast describing the men, and Rise and Phillips were apprehended shortly thereafter at least four city blocks apart. *Id.* The third man was never identified or apprehended. *Id.* At the time he was apprehended, Phillips had in his possession a wallet containing the victim's identification. *Id.* About twenty feet away from where Phillips was apprehended, two loaded firearms were found. *Id.* at 36-37.

In the meantime, other officers observed Rise slowly running up a street. *Id.* at 37. As the police approached him, Rise made statements indicating that individuals responsible for a shooting had gone another direction, and then he started to run away. *Id.* The officers who had observed Rise requested assistance, and Rise was apprehended shortly thereafter. *Id.* The officers retrieved Rise's jacket on which there was a substantial amount of blood. *Id.* While at the police station after being brought into custody, Rise heard Sergeant Daniel Keeler mention that some jewelry was found at the scene, and Rise stated that he had lost some jewelry that had been ripped off him and could possibly be found in the hallway of the victim's residence. *Id.*

The victim had suffered thirteen stab wounds, twenty incised wounds and trauma to various parts of his body.  *Id.* at 37-38. He was hemorrhaging under his scalp and had multiple lacerations to his head and face and other injuries consistent with his fall. *Id.* at 38.  The police found almost $20,000 in cash, jewelry, marijuana, and cocaine in their search of the victim's apartment.  *Id.* at 37.  They also found a black bag containing crack cocaine on stairs leading to the apartment.  *Id.*  Blood was found throughout the apartment and on the stairs and hallways leading outside.  *Id.*  Testing on the clothing of Phillips and Rise revealed the presence of blood that was a possible DNA match to the victim.  *Id.* at 38.

At trial, a Boston Police Department criminalist, Michael Gorn, testified regarding the blood evidence recovered from the scene and the defendants' clothes and belongings, as well as the difference between high, medium, and low velocity impact spatter.  *Id.*  The SJC summarized this testimony as follows:

> High-velocity impact spatter involves 'a lot of force,' such as a gunshot or an explosive, and breaks up blood into very small droplets.  Medium-velocity impact spatter occurs 'if you have an external force that's applied to an object [here the victim] and that external force is traveling anywhere from between five and twenty-five feet per second.'  Medium-velocity impact spatter may be determined by examining the pattern and size of the stains, the size being anywhere between one and three millimeters in diameter.  Medium-velocity impact spatter is consistent with a beating, a stabbing, or a cutting.  Low-velocity impact spatter does not involve an application of force, but rather, involves blood that falls under the force of gravity,

4

> such as blood falling to the ground after one cuts a
> finger.  It also includes transfer stains. Gorn
> testified that many of the bloodstains in the victim's
> apartment constituted medium-velocity impact stains.
> He testified that certain bloodstains on the jackets of
> the defendants contained impact spatter.

*Id.*

Officer Cellucci, one of the police officers who apprehended Rise, also testified at trial.  *Id.* at 37, 47.  He stated on direct examination that two firearms were recovered about twenty feet away "from where the suspect was captured."  *Id.* at 47.  He did not immediately identify which suspect he was referring to, but after making that statement, he "testified about the apprehension of a second suspect, identifying Rise by name." According to the SJC, "Cellucci's testimony left no doubt that it was not Rise who was apprehended near the firearms."  *Id.*

In her closing argument, the prosecutor observed when addressing the discovery of the gun:  "'Is it a coincidence that the people [Echols] identified, [the victim's] blood is on the gun twenty-five feet away?'"  *Id.* at 47 n.14.

The jury found Rise and his co-defendant guilty on all three theories of first degree murder presented by the prosecution, deliberate premeditation, extreme atrocity or cruelty, and felony-murder predicated on armed robbery, and did not specify whether the murder convictions were based on principal or joint venture liability.  *Id.* at 35 & n.2.  The two were also found

5

guilty of armed robbery with a handgun and armed robbery with a knife or sharp instrument. *Id.* at 35. On direct appeal the SJC considered the four arguments that Rise now raises as bases for federal *habeas* relief. The SJC rejected each and upheld his conviction in an opinion issued on November 24, 2008. *Id.* at 45-48. Rise thereafter filed this petition for writ of *habeas corpus*.

## II. STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") empowers federal courts to consider a writ of *habeas corpus* brought by an individual in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). In cases where the conviction was adjudicated on the merits in a state court, *habeas* relief may not be granted unless the adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* § 2254(d).

A state court's decision is "contrary to" clearly established federal law if its conclusion is "opposite to that reached by [the Supreme Court] on a question of law or if the

state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The "unreasonable interpretation" provision allows a federal court to grant a "writ if the state court identifies the correct governing legal principle from [the Supreme Court]'s decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

A federal court may not issue a writ under the "unreasonable interpretation" clause merely because, in its own judgment, it would have ruled differently from the state court. Rather, the state court's "application must be 'objectively unreasonable.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010) (quoting *Williams*, 529 U.S. at 409). This threshold for obtaining relief is "'substantially higher' . . . than *de novo* review." *Id.* (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)); *see also Janosky v. St. Amand*, 594 F.3d 39, 47 (1st Cir. 2010) ("To justify federal intervention, the state court's application must be both incorrect and unreasonable.").

### III. ANALYSIS

Rise raises anew here all the arguments he presented to the SJC. I address each claim in turn.

**A.  *Sufficiency of Evidence***

Rise argues that the evidence presented at trial was insufficient to establish his guilt for first degree murder and

armed robbery on either a joint venture or individual liability theory.  With respect to joint venture liability, he asserts that the evidence does not demonstrate that he had the requisite mental state, *i.e.*, knowledge of another's intent to commit a crime and agreement to assist them.  With respect to individual liability, Rise cites a lack of evidence that he planned to kill the victim, that he participated in the attack on the victim, or that he participated in an armed robbery.

The standard under the Due Process Clause of the Fourteenth Amendment for whether a conviction is based on sufficient evidence is set out in *Jackson v. Virginia*, 443 U.S. 307 (1979). That standard requires a federal court to evaluate "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at 319 (emphasis in the original).  As noted, AEDPA requires a reviewing federal court to "grant a presumption of correctness to factual determinations made by the state courts."  *Leftwich* v. *Maloney*, 532 F.3d 20, 21 (1st Cir. 2008).  Factual determinations adopted at either the trial or appellate level may only be rebutted by a petitioner upon the presentation of "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

The application of a legal standard, including the standard set out under *Jackson*, is reviewed under the "contrary to" or

"unreasonable application" clauses of 28 U.S.C. § 2254(d)(1).
*Sivo v. Wall*, — F.3d — , 2011 WL 2568002, at *3 (1st Cir. June
30, 2011). Because federal courts are constrained with respect
to the reevaluation of factual matters, "habeas review under
*Jackson* . . . is reserved for unusual cases and its standard 'is
rarely met where there is plausible evidence to support a
verdict.'" *Id.* (quoting *Tash v. Roden*, 626 F.3d 15, 20 (1st Cir.
2010)). Thus, "*Jackson* applies where there is no substantial
evidence of guilt or where the evidence amounts to little more
than colorable speculation." *Id.*

The SJC evaluated Rise's arguments under a standard
equivalent to *Jackson* as set out in *Commonwealth v. Latimore*, 393
N.E.2d 370, 374 (Mass. 1979) (citing *Jackson*, 443 U.S. at 318-
19). *Phillips*, 897 N.E.2d at 45; *see also Leftwich*, 532 F.3d at
24 ("[T]he Latimore court adopted the governing federal
constitutional standard as the Massachusetts standard for
sufficiency of the evidence challenges . . . ."). As a result, a
writ may only be granted if the SJC's effective application of
the *Jackson* standard is an unreasonable application of Supreme
Court precedent.

1. Joint Liability

To prove a joint venture, the Commonwealth was required to
show that Rise was "(1) present at the scene of the crime, (2)
with knowledge that another intends to commit the crime or with

intent to commit a crime, and (3) by agreement is willing and available to help the other if necessary." *Commonwealth v. Maynard*, 767 N.E.2d 1, 8-9 (Mass. 2002) (internal quotation omitted). Rise contends that the evidence only showed that he was present in the building at the time of the crime. He claims there was no evidence that he knew other individuals were going to commit a crime or that he had agreed to assist them.

The SJC found that sufficient evidence supported the jury's findings on a theory of joint venture. In particular, it held that the presence of stains consistent with the victim's blood on Rise's jacket supports a reasonable inference that he had been in the victim's apartment at the time of the attack, and not just in the building. *Phillips*, 897 N.E.2d at 45. The SJC concluded that the presence of impact spatter on the jacket, and on the clothing of Phillips, together with the fact that Rise fled from the residence with the other individuals while carrying something wrapped in a sheet, was sufficient to infer Rise's participation in, or willingness to assist others with, the robbery and attack. *Id.* at 45-46. Rise is correct that there was no *direct* evidence of his intention or state of mind with respect to the activities of the other two individuals. However, the SJC reasonably applied the standard in *Jackson* in coming to the conclusion that a rational jury could have relied on the circumstantial evidence to conclude that Rise intentionally participated in a joint

venture.  *See Sivo*, 2011 WL at *3 ("In this case the evidence

against [Petitioner] was circumstantial but it was nevertheless

substantial.")

## 2. Principal Liability

Rise also challenges the sufficiency of the evidence with

respect to his liability as a principal under all three theories

for which he was convicted of first degree murder: deliberate

premeditation, extreme atrocity or cruelty, and felony-murder.

Rise argues that the Commonwealth presented no evidence that

he formed a plan to kill the victim.  *See Commonwealth v. Coren*,

774 N.E.2d 623, 629 (Mass. 2002) ("A defendant deliberately

premeditates where he forms a plan to kill after deliberation and

reflection . . . .").  The SJC noted that no "particular length

of time" is required in order "to show deliberate premeditation,"

which may occur over a matter of seconds, *Phillips*, 897 N.E.2d at

46 (internal citation omitted), and found that the jury could

have inferred deliberate premeditation from the nature and extent

of the victim's injuries, which involved the use of weapons, as

well as the lengthy nature of the attack evident from the fact

that blood was found throughout the apartment.  *Id.*

Rise also argues that there was no evidence establishing his

participation in either the murder or an armed robbery, which he

contends is necessary to establish liability for extreme atrocity

or cruelty and felony murder, respectively.  As noted *supra*

11

Section III.A.1, the SJC found the evidence sufficient to
establish that Rise had participated in the attack.  The SJC also
found that the jury could have inferred Rise had participated in
a robbery and had been carrying the fruits of a robbery or a
weapon under the sheet when he fled the building.  *Id.* at 47.
Further, the impact spatter on Rise, together with the fact that
Phillips was evidently carrying two firearms, supported the
inference that Rise had participated in the attack by stabbing
the victim while Phillips handled the firearms.  *Id.*

    The SJC reasonably applied the standard set out in *Jackson*
in coming to the conclusion that the jury's findings as to
principal liability were sufficiently supported by the evidence.

**B.  *Prosecutor's Closing Argument***

    Rise argues that, in her closing argument, the "prosecutor
prejudicially exploited the confusing testimony given by Officer
Cellucci regarding which defendant was in the presence of the
firearms when apprehended."  Rise argues that the prosecutor's
statement, "Is it a coincidence that the people [Echols]
identified, [the victim's] blood is on the gun twenty-five feet
away?," *Phillips*, 897 N.E.2d at 47 n.14 [bracketed material in
SJC opinion], implied that Rise was found near the firearms.
Rise further challenges the prosecutor's hypothetical account of
the crime and his involvement in it.

The Supreme Court's decision in *Donnelly v. Christoforo*, 416 U.S. 637 (1974), "recognized that a prosecutor's closing argument could be sufficiently prejudicial so as to constitute a deprivation of a petitioner's constitutional rights." *Dagley v. Russo*, 540 F.3d 8, 14 (1st Cir. 2008). In examining a closing argument, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly,* 416 U.S. at 643).

Although the SJC did not explicitly rely on *Donnelly*, it did rely on Massachusetts' standard for prosecutor's closing arguments which is at least as protective. *Phillips*, 897 N.E.2d at 47-48 (citing *Commonwealth v. Sanders*, 885 N.E.2d 105, 114 (Mass. 2008) ("We review to determine whether the statements were improper and, if so, whether they 'did not influence the jury, or had but very slight effect, [i.e., whether we can say] with fair assurance, after pondering all that happened without stripping the [improper] action from the whole, that the judgment was not substantially swayed by the error.'") (quoting *Commonwealth v. Flebotte*, 630 N.E.2d 265, 268 (Mass. 1994) (alteration in the original) and *Commonwealth v. Pope*, 549 N.E.2d 1120, 1125 (Mass. 1990) (examining whether there was "prejudicial error" in a prosecutor's remarks)).

With respect to the allegedly misleading statement that the firearms were found near where Rise was apprehended, the SJC explained that, within the context of the testimony and the entirety of the prosecutor's closing argument, it was clear that Phillips, and not Rise, had been apprehended close to the firearm. *Phillips*, 897 N.E.2d at 48.  In fact, the prosecutor described both apprehensions and "made it clear that it was Phillips who had been apprehended near the firearms."  *Id.* at 47. As a result, the SJC concluded that there was no error.  *Id.*

In *Donnelly*, the Supreme Court considered a prosecutor's remarks which implied that the petitioner had wanted to plead guilty but had been denied the opportunity.  416 U.S. at 640-41. The *Donnelly* Court observed that "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations."  *Id.* at 647.  Applying that principle to the instant case there is no reason that the jury would put any undue weight on an apparent misstatement when the prosecutor herself, as well as the testimony of a witness, clarified the context of the firearms' discovery.  The SJC did not unreasonably apply the standard in *Donnelly* in ruling that there was no error.

Rise also objects to the prosecutor's hypothetical account of the crime, in which she explained the Commonwealth's theory

14

that Rise's motivation for visiting the victim's residence was to commit a robbery and that his involvement in the commission of the crime included the physical attack and a search for money and drugs.  In particular, Rise objects to the prosecutor's characterization of Rise's hypothetical thought process regarding the possibility that Echols would serve as a witness to the crime.

The SJC found that there was sufficient evidence presented at trial to support the scenario described by the prosecutor.  *Phillips*, 897 N.E.2d at 47-48.  In particular, it explained that a robbery motive was supported by the following facts: the victim was a known drug dealer, Phillips was found with the victim's wallet, Rise was carrying something when he fled the building, and a black bag containing crack cocaine was found on the stairwell of the residence.  *Id.* at 48.  The SJC further found that the prosecutor's description of the attack was supported by the condition of the victim and the apartment, *id.,* and that the prosecutor's comments regarding Echols[1] was proper argument responding to defense counsel's assertions that Echols was not credible.

---

[1]  The prosecutor posited that Rise thought, "Aw, it's just Shawn Echols; saying he's convicted no one's going to believe him.  He's involved with drugs.  It doesn't matter what he says, if he even bothers to talk to the police."

Rise argues, essentially, that the prosecutor "manipulate[d] or misstate[d] the evidence." *Darden*, 477 U.S. at 182.  However, the SJC reasonably found that there was sufficient evidence to support the inferences suggested by the prosecutor and that the statements were not improper.

## C. *Admissibility of Blood Spatter Evidence*

Rise argues that the trial judge erred when he overruled defense counsel's objection to the expert testimony regarding blood spatter.  Although Petitioner claims that the objection was made for lack of "expert qualification and foundation," these grounds for the objection were not articulated at trial. *Phillips*, 897 N.E. 2d at 47.  Rise argued on appeal, and in his petition, that the failure on the part of the Commonwealth or the trial judge to inquire as to the prior experience and qualifications of Gorn violated the Petitioner's constitutional rights to due process and a fair trial.

Standing alone, an error of state law regarding the admission of evidence is not a basis for *habeas* relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  Under certain circumstances, however, "a misbegotten evidentiary ruling that results in a fundamentally unfair trial may violate due process and, thus, ground federal habeas relief." *Coningford v. Rhode Island*, 640 F.3d 478, 484 (1st Cir. 2011).  However, "to trigger such relief the state court's application of state law must be

'so arbitrary or capricious as to constitute an independent due process . . . violation.'" *Id.* (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). The state court's decision in this case does not approach that level.

The SJC considered Gorn's "educational and work experience, certifications, professional memberships, and training in forensic science and blood stain pattern analysis" in concluding that the "judge's implicit discretionary ruling that Gorn was qualified to testify" was sufficiently supported. *Phillips*, 897 N.E.2d at 47. The SJC also noted that Massachusetts does not require a judge to qualify an expert before the jury. *Id.* at 47 n. 13 (citing *Commonwealth v. Frangipane*, 744 N.E.2d 25, 28 n.4 (2001)). The SJC's decision clearly falls well outside the zone of the arbitrary or the capricious, and thus cannot serve as a basis for *habeas* relief.[2]

## D.  *Ineffective Assistance of Counsel*

Rise's final claim is that his trial counsel provided ineffective assistance by failing to challenge the blood spatter

---

[2]  Respondent argues that the SJC rejected petitioner's claim regarding the admission of blood spatter evidence on an independent and adequate state ground, i.e., the failure to specify the grounds for the objection at trial. Although the SJC observed that "Rise did not object to Gorn's testimony on these grounds at trial," its rejection of the claim was not based on any resulting procedural bar. *Phillips*, 897 N.E.2d at 47. Rather, it found that the trial court did not abuse its discretion in admitting the evidence. *Id.* As a result, I reject Respondent's argument that the claim is barred from federal *habeas* review due to procedural default.

evidence for lack of foundation and expert qualification and
failing to cross-examine the expert as to alternative theories
for how the blood may have appeared on Rise's clothing.  The SJC
found that, because the trial judge did not abuse his discretion
in qualifying Gorn as an expert, Rise's claim predicated on the
failure to challenge the foundation and qualifications lacks
merit.  *Phillips*, 897 N.E.2d at 48.  With respect to the lack of
cross-examination, the SJC agreed with the trial court's finding,
in its denial of a motion for a new trial, that the claim must
fail because Rise did not support it with an expert affidavit
identifying alternative theories for the blood spatter, an
affidavit from trial counsel, or a showing that the strategy
proposed by the defendant would have made a material difference.
*Id.*

The constitutional standard for a claim of ineffective
assistance of counsel is set out in *Strickland v. Washington*, 466
U.S. 668 (1984), and includes two prongs.  First, a petitioner
"must show that counsel's performance was deficient" and involved
"errors so serious that counsel was not functioning as the
'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.*
at 687.  Second, a petitioner must show that the defense was
prejudiced, which requires a showing that counsel's performance
deprived him "of a fair trial, a trial whose result is reliable."
*Id.*

Because Rise was convicted of murder, the SJC evaluated his claim of ineffective assistance under MASS. GEN. LAWS ch. 278 § 33E "'to determine whether there exists a substantial likelihood of a miscarriage of justice.'" *Phillips*, 897 N.E.2d at 48 (quoting *Commonwealth v. Frank*, 750 N.E.2d 629, 633 (Mass. 2001)). That atatutory test inquires whether there was an error in the course of the trial and whether the "'error was likely to have influenced the jury's conclusion,'" and is more favorable to defendants than the standard under *Strickland.  Kirwan v. Spencer*, 631 F.3d 582, 590 n.3 (1st Cir. 2011) (quoting *Commonwealth v. Wright*, 584 N.E.2d 621, 624 (Mass. 1992)).

The Supreme Court recently emphasized in *Harrington v. Richter*, — U.S. — , 131 S.Ct. 770 (2011), that when reviewing a state court's determination with respect to ineffective assistance of counsel the "pivotal question is whether the state court's application of the *Strickland* standard was unreasonable" and not "whether defense counsel's performance fell below *Strickland*'s standard." *Id.* at 785. I find that the SJC's conclusions were not contrary to, or an unreasonable application, of the standard set out by *Strickland*. The SJC's ruling was based on Rise's failure to demonstrate that the objections to the expert's qualification or foundation would have been successful, or that the proposed line of questioning would have been fruitful. The SJC's opinion reflected a not unreasonable application of the *Strickland* standard to determine that there

19

was no showing of either error on the part of defense counsel or prejudice to the outcome of the trial.

### III. CONCLUSION

For the reasons stated herein, I GRANT Respondent's motion to dismiss the petition for writ of *habeas corpus* as to all claims (Dkt. No. 18).

/s/ *Douglas P. Woodlock*
DOUGLAS P. WOODLOCK
UNITED STATES DISTRICT JUDGE